IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

MICHAEL HARP, on behalf of himself
and on behalf of all others
similarly situated,

      Plaintiffs,

v.                               Case No. :

W.S. BADCOCK CORPORATION d/b/a
BADCOCK & MORE,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL HARP ("Plaintiff"), by and through his attorneys, and on behalf of himself, the Putative Class set forth below, and in the public interest, brings the following Class Action Complaint as of right against Defendant, W.S. BADCOCK CORPORATION d/b/a BADCOCK & MORE ("Defendant"), under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq.

## PRELIMINARY STATEMENT

1.    Defendant operates a furniture warehouse and distribution center in Mulberry, Florida, as well as furniture stores across the continental United States.

2.    Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action, such as termination, reduction of hours, change in position, failure to hire, and failure to promote.

3.     While the use of consumer report information for employment purposes is not per se unlawful, it is subject to strict disclosure and authorization requirements under the FCRA.

4.     Defendant willfully violated these requirements in systematic violation of Plaintiff's rights and the rights of other putative class members. Specifically, Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other putative class members based on undisclosed consumer report information without first providing Plaintiff and other affected class members with a copy of the pertinent consumer report, and without first providing them a reasonable opportunity to respond to the information in the report and discuss it with Defendant.

5.     Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendant on behalf of himself and one separate putative Class, consisting of Defendant's employees and prospective employees.

6.     Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class" consisting of:

> **All Badcock & More's employees and job applicants in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years of the filing of this complaint through the date of final judgment in this action, who were not provided the proper pre-adverse notice as required by the FCRA.**

7.     On behalf of himself and the Putative Classes, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

**THE PARTIES**

8.     Individual and representative Plaintiff Michael Harp lives in Polk County, Florida. Plaintiff is a former employee of Defendant, and is a member of the Putative Class defined below.

2

9.     Defendant is a furniture supply chain headquartered in Mulberry, Florida. Defendant is authorized to do business and doing business in Polk County.

## JURISDICTION AND VENUE

10.     This is a class action for damages in excess of $15,000, exclusive of interest, fees, and costs, for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

11.     Venue is proper in Polk County, because all of the events giving rise to these claims arose in this County.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

### *Background Checks*

12.     Defendant conducts background checks on many of its job applicants as part of a standard screening process. In addition, Defendant also conducts background checks on existing employees from time to time during the course of their employment.

13.     Defendant does not perform these background checks in-house. Rather, Defendant relies on outside consumer reporting firms to obtain this information and report it.

14.     These reports constitute "consumer reports" for purposes of the FCRA.

15.     The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

16.     Defendant typically does not provide job applicants or employees with a copy of their consumer reports when it takes adverse action against them based on the information in such reports.  By way of example, Plaintiff's employment was terminated due to information obtained by Defendant contained in the consumer report.

3

17.     This practice violates one of the most fundamental protections afforded to employees under the FCRA, and also runs counter to longstanding regulatory guidance. ("[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information….")

18.     By failing to provide Plaintiff and other Putative Class members with copies of their consumer reports prior to taking adverse employment action against them based on such reports, Defendant willfully disregarded this regulatory guidance and the plain language of the statute in violation of 15 U.S.C. §§ 1681b(b)(3)(A).

## ALLEGATIONS SPECIFIC TO PLAINTIFF

19.     On or around March 2015, after successfully completing a background investigation, Plaintiff was hired at Defendant's distribution center in Mulberry, Florida through a temp agency.

20.     On or around early October 2015, Defendant offered Plaintiff a permanent position after the completion of an additional background investigation.

21.     On or about October 12, 2015 Defendant informed Plaintiff that based on the information contained in the consumer report, Defendant was terminating his employment.

22.     Defendant did not provide Plaintiff with a copy of the consumer report that it relied upon. As a result, in violation of the FCRA, Plaintiff was deprived of any opportunity to review the information in the report and discuss it with his employer before he was terminated.

4

23.     It was unlawful for Defendant to terminate Plaintiff's employment and deny him future employment on the basis of information contained in a consumer report that was never shared with Plaintiff.

24.     In doing so, Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other putative class members, based on undisclosed consumer report information, without first providing Plaintiff and other affected class members with a copy of the pertinent consumer report, and without providing them a reasonable opportunity to respond to the information in the report and discuss it with Defendant.

25.     The FCRA requires employers to provide notice at three different periods: (1) before an employer requests and/or procures a consumer report, it must provide notice to the employee in a "stand-alone" document and must also receive written authorization from the employee (referred to as "Disclosure and Authorization"); (2) once an employer obtains a consumer report, before an employer can take adverse action against the employee it must first provide the employee with a copy of the report and provide a description of their rights under the FCRA (referred to as "Pre-Adverse Action Notice"); and (3) once an employer takes adverse action, it must notify the employee that (i) it is taking adverse action based on the information in the consumer report, (ii) the name, address, and telephone number of the consumer reporting agency that furnished the report to the person, (iii) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken, (iv) notice of the consumer's rights to obtain…a free copy of the consumer report on the consumer from the consumer reporting agency…[within] the 60–day period, and (v) notice of the consumer's right to

5

dispute…with a consumer reporting agency the accuracy or completeness of any information in a consumer repot furnished by the agency (referred to "Post-Adverse Action Notice"). See 15 U.S.C. § 1681b and § 1681m.

26.     Defendant failed to satisfy these above requirements.

## CLASS ACTION ALLEGATIONS

27.     <u>Numerosity</u>:   The Classes are so numerous that joinder of all members is impracticable. At this time, Plaintiffs do not know the exact size of the Class. Based on information and belief, the Class is comprised of at least thousands of members and is geographically dispersed throughout the country as to render joinder of all Class Members impracticable. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notices.

28.     <u>Typicality</u>:     Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendant uses common practices and automated systems in committing the conduct that Plaintiffs allege damaged them and the Class. Plaintiffs seek only statutory and punitive damages for their class-wide claims and, in addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Classes. Defendant uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

29.     <u>Adequacy</u>:     Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

30.     <u>Commonality</u>: Common questions of law and fact exist as to all members of each Class. Without limitation, the total focus of the litigation will be Defendant's uniform conduct

and procedures, whether Defendant provided the required notices, when it did so, and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices. Even the appropriate amount of uniform statutory under 15 U.S.C. § 1681n is a common question for members of each of the Classes.

31.     This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

32.     This case is also maintainable as a class action because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

33.     Class certification is also appropriate because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will

not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single action brought in a single forum.

34.    Plaintiff intends to send notice to all members of the Putative Classes to the extent required. The names and addresses of the Putative Class members are available from Defendant's records.

**FIRST CLAIM FOR RELIEF**
**Failure to Provide Copy of Consumer Report in Violation of FCRA**
**15 U.S.C. § 1681b(b)(3)(A)**

35.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

36.    Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

37.    Defendant violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with a copy of the consumer report that may have been used to take adverse employment action against them. *See* 15 U.S.C. § 1681b(b)(3)(A).

38.    The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

39.     Plaintiff and the Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages under 15 U.S.C. § 1681n(a)(2).

40.     Alternatively, and at a minimum, Defendant's actions were negligent.

41.     Plaintiff and the Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

42.     *WHEREFORE*, Plaintiff, on behalf of himself and the Putative Class, prays for relief as follows:

    A.     Determining that this action may proceed as a class action;

    B.     Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

    C.     Issuing proper notice to the Putative Classes at Defendant's expense;

    D.     Declaring that Defendant committed violations of the FCRA;

    E.     Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    F.     Awarding statutory damages as provided by the FCRA, including punitive damages;

    G.     Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

    H.     Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff and the Putative Class demand a trial by jury for all issues so triable.

Dated this 23rd day of February, 2016.

Respectfully submitted,


_____
**BRANDON J. HILL**
Florida Bar No. 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue
Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Direct No.: 813-337-7992
Facsimile No.: 813-229-8712
Email: bhill@wfclaw.com
Email: jriley@wfclaw.com
**Attorneys for Plaintiff**